James D. Bush, Jr. and Ellen L. Bush v. Commissioner.
Bush v. Commissioner
Docket No. 4737-62.
United States Tax Court
T.C. Memo 1964-16; 1964 Tax Ct. Memo LEXIS 317; 23 T.C.M. (CCH) 85; T.C.M. (RIA) 64016; January 29, 1964
*317 Marshall S. Scott, for the petitioners. Jones E. Davis, for the respondent. TIETJENS
Opinion TIETJENS, Judge: Respondent determined deficiencies in income tax for 1956 and 1959 of $4,585.79 and $2,246.53, respectively. The facts are fully stipulated and are hereby found as stipulated. The controlling question is whether expenses required to complete the petitioner's subcontract for road construction work which were paid by petitioner's surety under the provisions of a subcontractor's performance bond for the completion of the contract are deductible by the cash basis petitioners. The petitioners, husband and wife, filed their Federal income tax return for 1956 on a cash method of accounts, with the district director of internal revenue at San Francisco, California, and their return for 1959 with the district director of internal revenue at Jacksonville, Florida. James, who is hereinafter called petitioner, operated the Bush Construction Company as a sole proprietorship. In June 1958 the Bush Construction Company entered into a subcontract with Granite Construction Company, the prime contractor, to perform certain excavation, pipe work and subgrading on a road. *318 In connection with this subcontract the petitioner obtained a "Subcontractor's Bond" from American Casualty Company of Reading, Pennsylvania. The bond was dated June 19, 1958 and bond American Casualty to Granite in the amount of $49,558.50 "for the payment hereof well and truly to be made the said Principal [petitioner] and Surety [American Casualty] bind themselves, their successors and assigns, jointly and severally, * * *". The bond further provided that if the petitioner fully performed the subcontract, and held Granite harmless from all claims or liens, the bond would be void. In applying for the contract bond the petitioner agreed to "indemnify the Company [American Casualty] from and against any and all liability, loss, costs, damages, attorneys' fees and expenses of whatever kind or nature which [American Casualty] may sustain or incur by reason or in consequence of executing [the bond] as surety * * *". On or about November 21, 1958, petitioner assigned and transferred to American Casualty his rights in his subcontract, providing that any and all monies, payments, claims for monies, and rights to receive monies, or payments of any nature whatsoever which Contractor *319 [petitioner] now has or to which it is now entitled, or to which it may hereafter become entitled, or have under and by virtue of its aforesaid subcontract with said Obligee [Granite], and Contractor does hereby appoint said Surety its true and lawful attorney irrevocably, with power of substitution, to demand and receive any and all of said monies, payments or claims, more particularly hereinabove referred to, and to take in its name all lawful steps to recover the same and to receipt therefor. American Casualty expended an amount of $42,406.67 in completing the subcontract, of which it recovered an amount of $9,500 of the subcontract proceeds, leaving a deficit in the amount of $32,906.67. The petitioner made a promise by a letter dated May 31, 1959, to repay American Casualty at the rate of $50 per month, of which a total amount of $350 was repaid by the petitioner during the year 1959. This amount of $350 was allowed to the petitioner as an ordinary and necessary business expense. The petitioner repaid American Casualty $550 in 1960 and the approximate amounts of $600 and $450 in 1961 and 1962, respectively. [1] On November 9, 1962, the petitioner settled the amount of indebtedness *320 owed American Casualty for an amount of $3,000 and received a release from that company on or about February 21, 1963. In their joint Federal income tax return for the taxable year 1959, the petitioners showed on Schedule C a net loss from the construction business in the amount of $39,794.46, which included the amount of $32,906.67 paid out by the surety company. On July 5, 1960, the petitioners filed an Application for Tentative Carryback Adjustment, Form 1045, to carry back a net operating loss for 1959 of $19,749.84 to the year 1956. The asserted loss is computed as follows: Wages
$18,044.62
Other Income
2,066.04
Loss from Construction Company
(Sch. C)
(39,794.46)
Net Operating Loss
($19,683.80)
Pursuant to the application, an amount of $4,585.79 in tax, plus interest of $182.36, was refunded to the petitioner by the Commissioner on September 23, 1960. The taxable year 1956 is before the Court only because of the net operating loss carryback to that year from 1959. The Commissioner disallowed *321 the amount of $32,556.67, made up of the net amount of $32,906.67 paid by American Casualty, less the amount of $350 repaid by the petitioner, as an allowable business expense for the taxable year 1959. This disallowance resulted in a deficiency in income tax for the taxable year 1959 in the amount of $2,246.53 and the disallowance of the net operating loss carryback to the taxable year 1956. The petitioner claims that he is entitled to deduct $32,556.67. [2] The petitioner is on the cash basis of accounting and in order to be entitled to make such deduction he must show that he paid the amounts in question in the particular taxable year. This he claims he has done because the amounts were paid by the American Casualty on his behalf. He would equate his situation with having borrowed the money and made the payments. That, however, is not the case. The money was paid by American Casualty pursuant to the subcontractor's bond under which American Casualty bound itself absolutely, as a principal to make the full payment if the petitioner failed to properly perform his subcontract. See: . *322 The liability of a surety is that of an insurer of the obligation and on the happening of the default the surety is primarily liable. See: . Although the surety is bound with the principal by the same instrument the surety is an original promissor and debtor from the beginning. The surety joins in the same promise as his principal and the surety is primarily liable. See: . The surety liability is contingent on the default of the principal and becomes absolute when the default takes place. See In these circumstances we do not see how the petitioner can contend that he has borrowed the money from American Casualty to pay Granite. While it is true that American Casualty has a cause of action against the petitioner, it can not be held that American Casualty in meeting its primary obligation under the contract has paid the money as an agent on behalf of the petitioner. *323 Although it might be argued that "in effect" the surety was lending credit to the petitioner and paying the petitioner's obligations for him, that, as we have shown, was not the situation. Moreover, the petitioner is seeking a deduction, which is a matter of grace and to obtain its benefit the petitioner must bring himself clearly within the statutory provision. . This he has not done. Decision will be entered for the respondent. Footnotes
1. The petitioner objects to the materiality of these stipulated facts. We deem them material and pertinent and have therefore found them as stipulated.↩
2. The $32,906.67 minus $350 repaid to American Casualty by the petitioner and allowed as an offset by the Commissioner.↩